UNDER SEAL

FILED
CHARLOTTE, NC

DEC 1 6 2020

US DISTRICT COURT
WESTERN DISTRICT OF NC

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1343 |
| v. | ) | 18 U.S.C. § 1344(1) and (2) |
| | ) | 18 U.S.C. § 1001 |
| (1) IZZAT FREITEKH and | ) | 18 U.S.C. § 2 |
| (2) TARIK FREITEKH | ) | |
| a/k/a Tareq Freitekh | ) | 3:20CR435 |
| | ) | |

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

### Background

### Defendant and Related Entities and Individuals

1. IZZAT FREITEKH was a resident of the Western District of North Carolina.

2. TARIK FREITEKH, also known as Tareq Freitekh, was the son of IZZAT FREITEKH and a resident of California.

3. Individual A was married to IZZAT FREITEKH and was a resident of the Western District of North Carolina.

4. Bank 1 was a federally insured financial institution headquartered in Charlotte, North Carolina within the Western District of North Carolina. Bank 2 was a federally insured financial institution that was a subsidiary of a bank holding company located in Wyomissing, Pennsylvania.

5. Green Apple Catering LLC (hereinafter, "Green Apple") was a limited liability corporation formed in the State of North Carolina on or about March 18, 2020. IZZAT FREITEKH was the company's registered agent.

6. Aroma Packaging Systems (hereinafter, "Aroma Packaging") was a sole proprietorship. IZZAT FREITEKH identified himself on bank records as the purported owner of

1

Aroma Packaging.

7. La Shish Catering was a sole proprietorship. IZZAT FREITEKH identified himself on bank records as the purported owner of La Shish Catering.

8. La Shish Kabob Restaurant was a restaurant located in Charlotte, North Carolina, within the Western District of North Carolina. IZZAT FREITEKH and Individual A were the owners of La Shish Kabob Restaurant. At various times, La Shish Kabob was the business name used by IMS Food and Restaurants, LLC.

9. FinTech 1 was a financial technology company based in Florida and New Jersey. FinTech 1 was a Merchant Cash Advance (MCA) company that provided assistance to small businesses seeking funding, including the businesses owned by IZZAT FREITEKH.

10. FinTech 2 was a financial technology company based in Utah that matched businesses seeking funding with financing opportunities, including opportunities through the Paycheck Protection Program.

***The Paycheck Protection Program***

11. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

12. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and

make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (Small Business Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

13. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While the lender issued the PPP loan, the SBA provided a guarantee that the financial institution would be reimbursed. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

14. PPP loan proceeds were required to be used by the business on certain permissible expenses such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## Overview of the Fraud

15. As described further below, beginning on or about March 17, 2020, IZZAT FREITEKH and TARIK FREITEKH submitted, and caused to be submitted, fraudulent loan applications to Bank 1 and FinTech 1 in order to obtain funds through PPP.

16. After receiving the PPP loan proceeds, IZZAT FREITEKH and TARIK FREITEKH used the funds for improper expenses and caused the funds to be transferred among various bank

3

accounts in the name of IZZAT FREITEKH and associated entities.

## Purpose of the Conspiracy

17. It was the purpose of the scheme for IZZAT FREITEKH and TARIK FREITEKH to unjustly enrich themselves and others by obtaining PPP loan proceeds under false and misleading pretenses, including by making false statements about the number of employees and by providing false documentation.

## Manner and Means

### *The Green Apple PPP Application*

18. Bank 1 accepted PPP applications through an electronic portal which applicants used to upload documents and information. On or about May 1, 2020, an application for a $1 million PPP loan for Green Apple was transmitted through Bank 1's electronic portal. The application represented that Green Apple had an average monthly payroll of $400,000.

19. As part of the application, IZZAT FREITEKH electronically signed, or caused to be signed, an Application Addendum on which he identified himself as Green Apple's authorized representative. The Application certified that "the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms 1099-MISC."

20. IZZAT FREITEKH signed, or caused to be signed, a Bank 1 promissory note, which attested: "Borrower certifies that the information provided in the Application and the information that Borrower provided in all supporting documents and forms is true and accurate in all material respects. Borrower acknowledges that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571."

21. The Green Apple PPP application included false and fraudulent information about

4

its purported payroll, as well as fraudulent documentation purporting to establish that Green Apple made substantial monthly payroll disbursements.

    a.    The Green Apple PPP application included a document entitled "Green Apple Catering Payroll Summary 2019," which represented that Green Apple had an Employer Identification Number (EIN) of xx-xxx7219. The document provided that Green Apple disbursed $4,800,000 in "gross pay" in 2019 to 23 employees. The document further represented that Green Apple took the following deductions in 2019: $1,740,320.50 for federal tax; $275,568.75 for North Carolina State Tax; and $128,400 for Social Security. In fact, Green Apple did not receive its EIN until March 17, 2020. Moreover, at the time the PPP application was submitted to Bank 1, neither Green Apple nor IZZAT FREITEKH had filed federal taxes with the Internal Revenue Service ("IRS") for tax year 2019.

    b.    The Green Apple PPP application included an IRS Form 940 electronically signed by IZZAT FREITEKH purporting to show that, in 2019, Green Apple made $4,800,000 in payments to employees. In fact, no such Form 940 was ever filed with the IRS on behalf of Green Apple.

    c.    The Green Apple PPP application included an IRS Form 941 electronically signed by IZZAT FREITEKH purporting to show that Green Apple paid $1,200,000 in wages to employees during the first quarter of 2020. In fact, no such Form 941 was ever filed with the IRS on behalf of Green Apple.

22.    On or about May 14, 2020, Bank 1 funded the loan by disbursing $1 million to Bank 1 checking account x-1388 for Green Apple ("the Green Apple Account"). Account opening documents for the Green Apple Account were submitted to Bank 1 on or about March 18, 2020. IZZAT FREITEKH was listed as the sole authorized person on the account opening documents.

5

As of May 1, 2020, prior to the receipt of the PPP loan funds, the Green Apple Account had a balance of approximately $48.25.

23. On or about May 14, 2020, a tax preparer sent a message to the email account for TARIK FREITEKH (hereinafter, "the TARIK FREITEKH Email Account") stating, in relevant part, "Greetings Tarik! It was a pleasure working with you. Please provide the breakdown for Green Apple with 23 employees and monthly payroll $400,000." The TARIK FREITEKH Email Account responded with a list of salaries for the various positions at Green Apple.

24. On or about May 16, 2020, the TARIK FREITEKH Email Account sent a message to the tax preparer regarding Green Apple. The message stated, in relevant part, "I just spoke with the company that is preparing our loan applications. They informed me that [t]he SBA just released an 11 page application for the loan forgiveness." In addition, the message contained a list of salaries for various positions at Green Apple.

25. On or about May 30, 2020, the email account for IZZAT FREITEKH (hereinafter, "the IZZAT FREITEKH Email Account") forwarded a message to the TARIK FREITEKH Email Account. The message contained "important tax information for GREEN APPLE LLC" and provided information for accessing tax forms electronically.

6

### *The Aroma Packaging PPP Application*

26. On or about April 22, 2020, an application for a $380,000 PPP loan was submitted to FinTech 2. The application was never finalized or funded.

27. On or about April 30, 2020, an application for a $350,000 PPP loan for Aroma Packaging was transmitted through Bank 1's electronic portal. The application represented that Aroma Packaging had an average monthly payroll of $120,000.

28. As part of the application, IZZAT FREITEKH electronically signed, or caused to be signed, an Application Addendum, on which he identified himself as Aroma Packaging's authorized representative. The Application Addendum certified that "the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms 1099-MISC."

29. IZZAT FREITEKH signed, or caused to be signed, a Bank 1 promissory note, which attested: "Borrower certifies that the information provided in the Application and the information that Borrower provided in all supporting documents and forms is true and accurate in all material respects. Borrower acknowledges that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571."

30. The Aroma Packaging PPP application included false and fraudulent information about its purported payroll, as well as fraudulent documentation purporting to establish that Aroma Packaging made substantial monthly payroll disbursements.

    a. The Aroma Packaging PPP application included a document entitled "2019 Payroll Processor Records," which represented that Aroma Packaging disbursed $1,440,000 in "gross salaries" to 11 employees in 2019. The document further represented that Aroma Packaging took the following deductions in 2019: $512,750.30 for federal tax; $82,800 for North

Carolina State Tax; and $89,280 for Social Security. In fact, Aroma Packaging never filed federal taxes with the IRS for tax year 2019.

    b.    The Aroma Packaging PPP application included an IRS Form 940 electronically signed by IZZAT FREITEKH purporting to show that in 2019 Aroma Packaging made $1,440,000 in payments to employees. In fact, no such Form 940 was ever filed with the IRS on behalf of Aroma Packaging.

    c.    The Aroma Packaging PPP application included an IRS Form 941 electronically signed by IZZAT FREITEKH purporting to show that Aroma Packaging paid $360,000 in wages during the first quarter of 2020. In fact, no such Form 941 was ever filed with the IRS on behalf of Aroma Packaging.

31.    On or about May 6, 2020, Bank 1 funded the loan by disbursing $300,000 to Bank 1 account x-4239 in the name of IZZAT FREITEKH Sole Prop DBA Aroma Packaging Systems (the "Aroma Account"). IZZAT FREITEKH and TARIK FREITEKH were listed among the five authorized persons for the Aroma Account. As of May 1, 2020, prior to the receipt of the PPP funds, the Aroma Account had a balance of $200.14.

32.    On or about May 13, 2020, the TARIK FREITEKH Email Account received a message from the tax preparer verifying the spelling for Green Apple, Aroma Packaging, and La Shish Catering. On or about May 14, 2020, the TARIK FREITEKH Email Account replied to that message, stating, in relevant part, "I just wanted to check if all is going well regarding the three companies filing. Thank you. Kind Regards, Tarik Freitekh."

33.    Following the receipt of the PPP funds in the Aroma Account, multiple large transfers were made from the Aroma Account to other accounts in the name of IZZAT FREITEKH and associated entities, including the following transfers on or about May 7, 2020:

8

a. Approximately $150,000 to Bank 1 checking account x-5182 in the name of IZZAT FREITEKH;

b. Approximately $70,000 to Bank 1 checking account x-6067 in the name of "Izzat Freitekh Sole Prop DBA Izzat Freitekh La Shish Catering"; and

c. Approximately $149,000 to a Bank 1 checking account x-4803 in the name of "DBA Freitekh Entertainment Izzat Freitekh Sole Prop."

***The La Shish Kabob, La Shish Catering and IMS Food and Restaurants PPP Applications***

34. Beginning on or about April 7, 2020, and continuing through May 2020, IZZAT FREITEKH, and TARIK FREITEKH submitted, and caused to be submitted, multiple PPP applications to Bank 1 and FinTech 1 for IMS Food and Restaurants; IMS Food and Restaurants LLC; La Shish Catering; and La Shish Kabob.

35. These applications included an application on or about April 7, 2020, for a $150,000 PPP loan for La Shish Kabob ("La Shish Kabob Application") that was submitted to FinTech 1 through FinTech 2.

36. The La Shish Kabob Application stated that La Shish Kabob had an average monthly payroll of $6,000 and 12 employees. IZZAT FREITEKH and Individual A were each listed on the application as cofounders with 50% ownership of La Shish Kabob. The La Shish Kabob Application included an electronic signature purportedly made by Individual A.

37. The La Shish Kabob Application included a certification, purportedly signed by Individual A, that "the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

9

38. Additionally, the La Shish Kabob Application included a certification, purportedly signed by Individual A, "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from [the United States Small Business Administration] is punishable under the law, including under 18 USC 1001 and 3571."

39. The La Shish Kabob Application included a 2019 IRS Form 1040, which indicated that the form had been filed jointly by IZZAT FREITEKH and Individual A. However, no such IRS Form 1040 was ever filed with the IRS.

40. On or about April 8, 2020, a FinTech 2 representative received an email from the IZZAT FREITEKH Email Account on which the TARIK FREITEKH Email Account and the email account for Individual A (hereinafter, "the Individual A Email Account") were copied. The email read, in relevant part, "Thank you for helping us getting [*sic*] a loan, please find a copy of my DL as requested, our Restaurant is considered one of the best restaurants in Charlotte and surrounding areas." A copy of the driver's license for IZZAT FREITEKH was attached to the message.

41. On or about April 22, 2020, a FinTech 2 representative received an email from the IZZAT FREITEKH Email Account, which read:

> Other than La shish we own two more business [*sic*], IMS food and Aroma Packaging systems. We have 9 employees in aroma and 12 in IMS food. Can we apply for another SBA loan for each business? Also we have not heard back from [FinTech 1]. But we got the email that they hired 200 more employees because how busy they are.
> Thank you.
> Izzat Freitekh

42. On or about April 28, 2020, FinTech 1 received a message from the Individual A Email Account, with copy to the IZZAT FREITEKH Email Account. The email read:

10

> Thank you so much for your help. My husband and I are very thankful. We were wondering how long it may take for the loan amount to be deposited into our [Bank 1] La shish kabob business account. Our Restaurant is considered one of the best restaurants in Charlotte and surrounding areas. We have to take care of our employees and clients as they have been with us since we started in 2008. . . . I hope you will be able to expedite depositing the amount.
> Thank you so much. We really appreciate it.
> Kind regards,
> [Individual A]

43. On or about April 30, 2020, FinTech 1 sent an email to the Individual A Email Account, stating, in relevant part: "Your application was completed and is currently in our funded queue. There is a slight delay due to the amount of applications in the queue." FinTech 1 received the following response:

> ... Roughly how many days do you think it might take us to be on top of the Queue. That will help us plan our scheduled payments. If you are ever in Charlotte NC[, y]ou are invited to our restaurant anytime to enjoy our food on us. Thank again and I hope you have a great day.
> Kind Regards,
> [Individual A]
> La Shish kabob

44. In addition to the La Shish Kabob Application, on or about April 14, 2020, an application for a $300,000 PPP loan for La Shish Catering (the "La Shish Catering Application") was transmitted through Bank 1's electronic portal. The La Shish Catering Application included the same false and fraudulent IRS Form 1040 for IZZAT FREITEKH and Individual A included with the La Shish Kabob Application.

45. The La Shish Catering Application included false and fraudulent payroll summaries for thirteen purported employees of La Shish Catering.

46. On or about May 5, 2020, Bank 1 checking account x-6067 in the name of "Izzat Freitekh Sole Prop DBA Izzat Freitekh La Shish Catering" was funded with $300,000 based on the La Shish Catering Application.

11

47. On or about May 6, 2020, Bank 2 funded the PPP loan based on the La Shish Kabob Application with a payment of $150,000 to Bank 1 checking account x-6067 in the name of "Izzat Freitekh Sole Prop DBA Izzat Freitekh La Shish Catering."

48. IZZAT FREITEKH was listed as the sole authorized person on the account opening documents for checking account x-6067 in the name of "Izzat Freitekh Sole Prop DBA Izzat Freitekh La Shish Catering." As of May 1, 2020, prior to the receipt of the PPP loan funds, the account had a balance of $9,883.08.

49. Following the receipt of the PPP funds, there were multiple large transfers to other accounts in the name of IZZAT FREITEKH and associated entities, including two transfers, on or about May 6, 2020, of approximately $150,000 to the Bank 1 checking account x-5182 in the name of IZZAT FREITEKH and approximately $200,000 to Bank 1 checking account x-4803 in the name of "DBA Freitekh Entertainment Izzat Freitekh Sole Prop."

50. The PPP applications submitted to Bank 1 beginning on or about April 14, 2020 and continuing until on or about May 1, 2020, in the name of IMS Food and Restaurants, IMS Food and Restaurants LLC, and La Shish Catering listed an EIN of xx-xxx2365. In fact, this EIN belonged to a different, unrelated entity located in Florida, Entity 1. After IZZAT FREITEKH and TARIK FREITEKH submitted and caused to be submitted applications to Bank 1 using EIN xx-xxx2365, Entity 1 also applied for a PPP loan. Entity 1's request was rejected because La Shish Catering had already been granted a PPP loan using that same EIN.

## COUNT ONE
## (CONSPIRACY TO COMMIT WIRE FRAUD)

51. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 50 of this Indictment.

52. From March 2020 through July 2020, the exact dates to the Grand Jurors unknown, in the Western District of North Carolina and elsewhere, the defendants,

(1) IZZAT FREITEKH and
(2) TARIK FREITEKH, also known as TAREQ FREITEKH,

knowingly and intentionally, that is, with the intent to advance the conspiracy, did combine, conspire, and agree with each other and with others known and unknown to the Grand Jury to commit wire fraud, that is, to knowingly and willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmitted and caused to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purposes of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purposes of the Conspiracy

53. The Grand Jury realleges and incorporates by reference paragraph 17 of this Indictment as a description of the purposes of the conspiracy.

### Manner and Means of the Conspiracy

54. The Grand Jury realleges and incorporates by reference paragraphs 18 to 44 of this Indictment as a description of the manner and means of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

13

## COUNT TWO
## (Bank Fraud Scheme)

55. Paragraphs 1 through 50 of the Indictment are incorporated by reference as if fully set forth herein.

56. From in or around March 2020 through July 2020, the exact dates to the Grand Jurors unknown, in the Western District of North Carolina, and elsewhere, the defendants,

(1) IZZAT FREITEKH and
(2) TARIK FREITEKH, also known as TAREQ FREITEKH,

aided and abetted by each other and others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice (1) to defraud financial institutions and (2) to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, financial institutions, by means of false and fraudulent pretenses, representations, and promises.

All in violation of Title 18, United States Code, Sections 1344(1) and (2) and 2.

## COUNT THREE
## (FALSE STATEMENTS)

57. Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

58. On or about July 27, 2020, defendant IZZAT FREITEKH, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made the following materially false, fictitious, or fraudulent statement or representations, including that:

   a. A representative from a company called "Kyber Capital" contacted him and offered to apply for SBA loans on IZZAT FREITEKH's behalf in exchange for a portion of the loan proceeds.

   b. Kyber Capital completed and submitted the loan applications purportedly submitted by IZZAT FREITEKH and Individual A.

   c. Neither IZZAT FREITEKH nor Individual A used the Individual A Email Account or the IZZAT FREITEKH Email Account.

   d. IZZAT FREITEKH provided Kyber Capital with the login information for the IZZAT FREITEKH Email Account and the Individual A Email Account.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $1,750,000, such amount constituting the proceeds of the violations set forth in this bill of indictment;

b. Approximately $977,607 in funds seized by law enforcement in or around July 2020 from Bank of America Account x-1388, such account held in the name of Green Apple Catering LLC;

16

c. Approximately $36,600 in funds seized by law enforcement in or around July 2020 from Bank of America Account x-4239, such account held in the name of Izzat Freitekh Sole Prop DBA Aroma Packaging Systems;

d. Approximately $7,863 in funds seized by law enforcement in or around July 2020 from Bank of America Account x-6067, such account held in the name of Izzat Freitekh Sole Prop DBA Izzat Freitekh La Shish Catering;

e. Approximately $78,217 in funds seized by law enforcement in or around July 2020 from Bank of America Account x-4803, such account held in the name of DBA Freitekh Entertainment Izzat Freitekh Sole Prop; and

f. Approximately $200,020 in funds seized by law enforcement in or around July 2020 from Bank of America Account x-5182, such account held in the name of Izzat Freitekh.

A TRUE BILL:

GRAND JURY FOREPERSON

R. ANDREW MURRAY
UNITED STATES ATTORNEY

*Jenny Grus Sugar*
JENNY GRUS SUGAR
ASSITANT UNITED STATES ATTORNEY

DANIEL S. KAHN
ACTING CHIEF, FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*J. Sugar on behalf of*
JOSHUA DEBOLD
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION

17