UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-CR-00435-FDW-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| IZZAT FREITEKH, *et al.*, | ) | |
| Defendants. | ) | |

THIS MATTER is before the Court on the following motions: (1) Defendant Tarik Freitekh's ("**Tarik**") Supplemental Motion for Bond Pending Sentencing, (Doc. No. 118); (2) Defendant Izzat Freitekh's ("**Izzat**") Motion for Acquittal or to Set Aside the Jury Verdicts, (Doc. No. 122); and (3) Tarik's Motion for Acquittal or to Set Aside the Jury Verdicts and to Adopt Co-Defendant Izzat Freitekh's Motion for Judgment of Acquittal or to Set Aside the Jury Verdicts, (Doc. No. 123). On April 13, 2022, the Court held a hearing on Tarik's Supplemental Motion for Bond. The Motions for Acquittal have been fully briefed. Accordingly, the motions are ripe for review. As a preliminary matter, the Court GRANTS Tarik's Motion for Judgment of Acquittal, (Doc. No. 123), solely to the extent it seeks to adopt Izzat's Motion. For the reasons set forth below, however, the Court otherwise DENIES Defendants' motions.

**I.     MOTION FOR BOND**

On March 17, 2022, immediately following the return of the jury's verdict, the Government moved for detention of Defendants. After hearing the parties' arguments, the Court found Tarik failed to meet his burden of establishing by clear and convincing evidence that he was not likely to flee or pose a danger to the safety of any other person or the community. See 18 U.S.C. §

1

3143(a)(1). Accordingly, Tarik was remanded into the custody of the U.S. Marshals on March 17, 2022. Thereafter, on March 18, 2022, Tarik filed his Supplemental Motion for Bond Pending Sentencing, (Doc. No. 118), wherein Tarik, through his Counsel, appears to seek reconsideration of the Court's previous ruling because, *inter alia*, "[t]he Court's oral order of detention was based upon flight risk which [Tarik's Counsel] was not, [on March 17, 2022], fully prepared to address." (Doc. No. 118, p. 2). On April 14, 2022, the Court held a second bond review hearing. At the hearing, Tarik, through his Counsel, reasserted his belief of eligibility for release pending sentencing, relying primarily on a proposal of a third-party custodian to be paid by Tarik and his family. For the reasons set forth below and at the March and April hearings, the Court again finds Tarik has failed to present clear and convincing evidence that he is not likely to flee or pose a danger to the community if released.

Rule 46 of the Federal Rules of Criminal Procedure conditions a convicted person's eligibility for release pending sentencing or appeal on 18 U.S.C. § 3143. This statute is a product of the Bail Reform Act of 1984. Under 18 U.S.C. § 3143(a)(1), the sentencing judge "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence … be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released …." The statute creates a presumption against release pending sentencing and casts the burden upon defendants to justify release on bail following conviction. See U.S. v. Jinwright, No. 3:09-cr-00067, 2010 WL 2926084 (W.D.N.C. July 23, 2010); U.S. v. Rankin, 289 F. Supp. 3d 846, 848 (S.D. Ohio 2017) (citing U.S. v. Vance, 851 F.2d 166, 168-70 (6th Cir. 1988)). Moreover, it is well settled that even if a defendant proffers sufficient evidence tending to rebut this presumption, "the presumption does not disappear entirely, but remains a factor to be considered

2

among those weighed by the district court." U.S. v. Risley, No. 1:17-cr-147, 2017 WL 2365240, at *2 (M.D.N.C. May 31, 2017) (listing authorities).

As set forth above, the Court previously found Tarik had not presented clear and convincing evidence that he was not likely to flee. Nothing in Tarik's Supplemental Motion, (Doc. No. 118), and none of the evidence presented at the April hearing warrants alteration of the Court's conclusion or establishes that Tarik is not likely to flee and does not pose a danger to the community. Although Tarik has some family that resides in Charlotte, North Carolina, including Izzat, his father and co-defendant in this case, Tarik provided no evidence that he has established a community within or has substantial ties to Charlotte. Instead, the evidence presented shows that Tarik permanently resided and has a driver's license in the State of California, and that he and his wife resided in Waxhaw, North Carolina, at his parent's home, for approximately eighteen months prior to trial, only after the Indictment was entered. Tarik's compliance with his pretrial conditions, which he again argues shows he is not likely to flee, fails to address a material change in circumstances – Tarik has now been convicted and is no longer entitled to a presumption of innocence. Tarik also reasserted he previously surrendered his passport and has seldomly, if at all, travelled internationally in the last ten years. Given the extent with which Tarik was willing to go to avoid criminal conviction, including money laundering, falsifying documents, and concealing material facts, his arguments are insufficient to rebut the presumption of detention after conviction.[1]

---

[1] The Court also notes, as it did during the April hearing, several sources on the Internet list Tarik's purported net worth to be substantial. Indeed, the Charlotte Observer reported a Google search for "Tarik Freitekh" "mentions his reported $300 million net worth, a lineup of fancy cars, and photos of him shoulder to shoulder with Justin Bieber and Sofia Vergara. There even appears to be a pet tiger." Michael Gordon, *From pix with Bieber to a Charlotte courtroom: Father, son charged with COVID fraud*, Charlotte Observer, (Dec. 18, 2020), at 2. Although the Court does not generally rely on information set out in the media during detention hearings, here the Charlotte Observer is merely reporting the contents of a Google search of Tarik and is, therefore, not the declarant of the statements. This is yet another example of Tarik's failure to show by clear and convincing evidence that he is not a risk of flight because the Internet appears to show he certainly has the resources to flee.

3

Furthermore, with respect to Tarik's improper proposal to pay for a third-party custodian to monitor him pending sentencing, the Government argues, and the Court agrees, that several other courts have considered and rejected similar proposed conditions, finding these conditions an inappropriate means to foster inequity impermissible under the Bail Reform Act. See U.S. v. Boustani, 932 F.3d 79, 82 (2d Cir. 2019); U.S. v. Bothra, No. 19-1953, 2019 WL 8883664, at *2 (6th Cir. Nov. 5, 2019); U.S. v. Tajideen, No. 17-46, 2018 WL 1342475, at *6 (D.D.C. Mar. 15, 2018); U.S. v. Zarrab, No. 15-867, 2016 WL 3681423, at *13 (S.D.N.Y. June 16, 2016). In Boustani, the Second Circuit explained:

> We now expressly hold that the Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails. It is a fundamental principle of fairness that the law protects the interests of rich and poor criminals in equal scale, and its hand extends as far to each. To interpret the Bail Reform Act as requiring district courts to permit wealthy defendants to employ privately funded armed guards where an otherwise similarly situated defendant without means would be detained would violate this core principle. Such a two-tiered system would foster inequity and unequal treatment in favor of a very small cohort of criminal defendants who are extremely wealthy.

Boustani, 932 F.3d at 82. Finding the Second Circuit's analysis and conclusion of similarly proposed conditions persuasive, the Court finds inappropriate the third-party custodian conditions proposed here, particularly in light of Tarik's conviction and the Court's finding of risk of flight and threat of economic harm to the community, as set forth below. Moreover, the Court notes the third-party custodian conditions, as proposed, do not sufficiently overcome the presumption of detention set forth under Section 3143 because the proposed conditions, including one daily check-in at a random time and access to remote monitoring, do not eliminate the Court's concerns of flight.

In addition, during the April hearing, the Government argued the crimes Tarik was convicted of, including fraud, money laundering, and falsifying and concealing material facts,

4

establish he poses a threat to the safety of the community if released.  This Court has previously found that 18 U.S.C.  3143(a) encompasses the pecuniary safety of the community.  See Jinwright, 2010 WL 2926084, at *4.  The elaborate scheme, including conspiracy, fraud, and the fabrication of documents in an attempt to obstruct justice, Tarik was convicted of certainly support a finding that Tarik is an economic threat to this community.  Because Tarik failed to address this issue, he failed to meet his burden of showing by clear and convincing evidence that he does not pose a danger to the community.  Accordingly, Tarik has not met his burden to establish either that he is not likely to flee or pose a danger to the safety of any other person or the community.  See 18 U.S.C. § 3143(a).  The Court, therefore, declines to alter its previous ruling finding detainment necessary and appropriate and DENIES Tarik's Supplemental Motion for Bond Pending Sentencing.

## II.     MOTIONS FOR ACQUITTAL

After a jury returns a guilty verdict, "the court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c)(2).  "Reversing a conviction due to insufficient evidence is reserved for the rare case where the prosecution's failure is clear."  U.S. v. Mangum, 539 F. Supp. 3d 515, 525 (E.D.N.C. 2020) (quoting U.S. v. Beidler, 110 F.2d 1064, 1067 (4th Cir. 1997) (quoting Burks v. U.S., 437 U.S. 1, 17 (1978))) (internal quotations omitted).  When considering a motion under Rule 29, a jury's verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."  U.S. v. Mayberry, 341 F. App'x 859, 861 (4th Cir. 2009) (citation omitted).  Substantial evidence exists and the court must sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.  U.S. v. Penniegraft, 641 F.3d 566, 571-72 (4th Cir. 2011) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original) (citation omitted);

5

U.S. v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996). "Furthermore, this court cannot make its own credibility determinations but must assume that the jury resolved all contradictions in testimony in favor of the Government." Penniegraft, 641 F.3d at 572. Thus, a defendant who challenges the sufficiency of the evidence "bears a heavy burden." Mangum, 539 F. Supp. 3d at 525 (quoting Beidler, 110 F.3d at 1067).

The crux of Izzat and Tarik's Rule 29 motions is an insufficiency of evidence to support each of their convictions. See (Doc. Nos. 122, 123). In addition, Defendants assert an alleged inconsistency of the verdicts and certain evidence admitted to the jury and relied upon by the Government at trial establish the necessity for the Court to set aside the verdict and enter an acquittal. Id. Finally, Tarik argues, "the alleged falsification charged as Count 9 was shown to be neither false, knowing, nor material." (Doc. No. 123, p. 8). Having reviewed the evidence in the light most favorable to the verdict, the Court agrees with the Government and finds a rational trier of fact could certainly have found the essential elements of the crimes Defendants were convicted of beyond a reasonable doubt. See Penniegraft, 641 F.3d at 571-72; (Doc. Nos. 124, 125). Further, no inconsistency in the verdicts exists and, even if such inconsistency existed, "[i]t is well established that an acquittal of the [defendant's] alleged co-conspirator does not necessitate that the [defendant's] conviction be vacated."[2, 3] U.S. v. Darby, 455 F. App'x 329, 2011 WL 5925316, at *4 (4th Cir. 2011) (citing U.S. v. Powell, 469 U.S. 57, 65 (1984). Such is this case here,

---

[2] As the Government asserts, the Court polled the jury, and each juror confirmed his or her assent to the verdict. See U.S. v. Cherry, 720 F.3d 161, 167 (4th Cir. 2013) ("The purpose of a jury poll is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, to ensure that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.")

[3] The Court further notes Defendants failed to raise any purported inconsistency in the jury verdict to the attention of the Court or request the jury conduct further deliberations to clarify the verdict prior to the release of the jury. Accordingly, Defendants have waived their right to seek a new trial based on this purported inconsistency. See Vigilant Ins. Co. of New York v. McKenney's Inc., 524 F. App'x 909, 911 n.2 (4th Cir. 2013) (citing White v. Celotex Corp., 878 F.2d 144, 146 (4th Cir. 1989); Fed. R. Civ. P. 49(b)).

particularly where the evidence presented at trial identified, at a minimum, two additional co-conspirators – Iman Freitekh and Haya Freitekh – with whom the jury reasonably could have concluded Tarik conspired.  In addition, the BMW photographs were admitted to the jury and relied upon by the Government at trial in accordance with the Federal Rules of Evidence after Tarik, during cross-examination of Khalid Ghatashe from Wells Auto Group, created the misimpression that the vehicle was purchased by and for Iman Freitekh.  See Fed. Rs. Evid. 401, 403.  Therefore, in contrast to Tarik's assertions, this evidence was not relied upon "to create in the jury's mind the impression that Tarik Freitekh was a high-roller who must have been benefitting from ill-gotten PPP loans." (Doc. No. 123, p. 5).  Moreover, to the extent Tarik contends the Government "failed to make its case that Tarik Freitekh violated 18 U.S.C. § 1001(a)(1) as alleged in Count 9," (Doc. No. 123, p. 8), the Court respectfully disagrees and reiterates its agreement with the Government's briefing and its finding that substantial evidence supports Tarik's conviction on Count 9.  Because substantial evidence supports the convictions, the Court denies Defendants' Rule 29 motions.

### III. MOTIONS TO SET ASIDE JURY VERDICTS

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  When a Rule 33 motion attacks the weight of the evidence, the district court is not required to view the evidence in a light most favorable to the government and, instead, may evaluate the credibility of witnesses. U.S. v. Arrington, 757 F.2d 1484, 1486 (4th Cir. 1985).  The Fourth Circuit has explained: "A new trial may be appropriate when the jury's verdict is inapposite to the weight of the evidence and it would be unjust to enter judgment on that basis." U.S. v. Crane, 260 F. App'x 572, 573 (4th Cir. 2008) (citing Tibbs v. Fla., 457 U.S. 31, 38 n.11, 44 n.20 (1982)).  Accordingly, "a trial court should exercise its

discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstances when the evidence weighs heavily against it." U.S. v. Smith, 451 F.3d 209, 216 (4th Cir. 2006) (citation and internal quotations omitted). In other words, a new trial should be granted only when the evidence tilts so heavily against guilt that the jury's verdict amounts to a miscarriage of justice. U.S. v. Shipp, 409 F.2d 33, 36-37 (4th Cir. 1969).

Defendants Rule 33 arguments echo their Rule 29 argument and include assertions that a new trial is warranted because of insufficient evidence, because the willful blindness standard was not supported by the evidence, and for the purported violations of the attorney-client privilege and confrontation clauses. See (Doc. Nos. 118, 123, 126). Based on the evidence presented at trial, the Court again agrees with the Government and finds this case does not present one of the rare circumstances where the evidence tilts so heavily against guilt as to warrant a new trial. See Smith, 451 F.3d at 216; Shipp, 409 F.2d at 36-37; see also (Doc. Nos. 124, 125). Despite Izzat's contentions otherwise, ample evidence exists in the record the jury reasonably could have used to support a finding that Izzat willfully closed his eyes to wrongful conduct. Accordingly, the willful blindness instruction was appropriate. See U.S. v. Hale, 857 F.3d 158, 168 (4th Cir. 2017) ("it is appropriate to instruct the jury on willful blindness when the defendant claims lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance.") (citation and internal quotations omitted). Lastly, to the extent Defendants again assert the purported violations of the attorney-client privilege and confrontation clause relating to the subpoenas issued to Defendants' former attorneys entitle Defendants to a new trial, (Doc. No. 122, pp. 6-7), the Court disagrees for the same reasons set forth in its oral ruling on February 24, 2022 – primarily that any such privilege was waived upon the voluntary provision of the relevant documents to the

Government[4] and Defendants failed to raise a valid confrontation clause issue. The court accordingly denies Defendants' Rule 33 Motions.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Tarik Freitekh's Supplemental Motion for Bond Pending Sentencing, (Doc. No. 118), is DENIED; Defendant Izzat Freitekh's Motion for Acquittal or to Set Aside the Jury Verdicts, (Doc. No. 122), is DENIED; and Defendant Tarik Freitekh's Motion for Acquittal or to Set Aside the Jury Verdicts, (Doc. No. 123), is GRANTED IN PART, to the extent it seeks to adopt Izzat's Motion for Judgment of Acquittal or to Set Aside the Jury Verdicts, and is otherwise DENIED.

IT IS SO ORDERED.

Signed: May 3, 2022

_____
Frank D. Whitney
United States District Judge

---

[4] See In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981) ("when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility than an opponent will obtain and use the material, he may be deemed to have waived work product protection…. In other words, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.")